My name is Esmeralda Alfaro. I'm here for Petitioner Mekonnen. Your Honors, in this case we're dealing with an asylum withholding and convention against torture. It's an immigration case. The main problem with this case, or the judge's decision, was that they found that the petitioner was not credible in certain aspects of this case, mainly when he testified regarding the confiscation of his home, the time that a friend of his weight called him to warn him about the government arrests when the war broke out in 1998 between the Ethiopian and Eritrean government. Third, the testimony regarding petitioner's identification. Fourth, when petitioner was transferred from one detention center to another. Fifth, where the petitioner hid from the government when he was released from prison. And sixth, the authentication of petitioner's birth certificate. I'd just like to alert the Court that this petitioner, when he entered this country, that was in August of 2002. We are now in the year 2010. He is now married to a U.S. citizen and has two children, two United States citizen children. A motion was filed with the Ninth Circuit Court to remand the case back to the immigration judge to do an adjustment of status, but that motion was denied. You filed that motion to the Ninth Circuit. Wouldn't you want to file a motion to reopen in front of the BIA? Well, Your Honor, the jurisdiction at that point was with the Ninth Circuit, so we couldn't file a motion with the Board of Appeal. Okay, so you haven't filed anything concerning the adjustment yet? The adjustment was filed with the Immigration Office, Your Honor, at USCIS. However, because of the pending immigration case, the Immigration Office does not have jurisdiction to adjudicate that adjustment. This Court was taken off docket for mediation to figure out whether we could come up with a joint motion with the District Council. We did have a conference, and they did not agree. They found that because Respondent Petitioner had entered with a fraudulent passport, that he would not be able to adjust. Now, Petitioner's wife is a United States citizen. The visa is immediately available. The family petition, the I-130, has been filed. It is still currently pending. We also filed an I-601 waiver for the fraudulent entry with the passport. Our argument is that Respondent was admitted to the United States, and due to the fraudulent passport that was used, he qualifies for a waiver so that if the waiver is granted, that would take away the bar from him being able to adjust and obtain his legal residency in this country. Is any of that in front of us at this time? No, Your Honor. Was he given voluntary departure? Your Honor, to my knowledge, he was removed from the country. I mean, I'm looking at the end of the IJ's order, and I don't see voluntary departure. So that means he's got a, is it a 10-year bar that you need to get around somehow? Well, Your Honor, he entered the country on August of 2002, and he was given a notice to appear, I believe, in December of 2002. So there would be no 10-year bar for legal time. I'm sorry, there would be a 10-year bar for the order of removal. Yes, that is correct. And the government disputes that entry date, right? Yes, Your Honor. I'm not sure. The immigration judge found the restitution order to be not credible, but there was no issues. There was no proof of the entry, Your Honor, when he came into the country. Right, there was no records. The government had no records of an entry on that date and the name that was on the passport. That is correct. But even the notice to appear says that he was admitted into the country. They're saying that they don't know the date, they don't know the time or where. Well, he's very specific as to a date. I'm sorry, Your Honor, I didn't hear that. Excuse me, his testimony is very specific as to a date. Yes. And when he comes into Newark, and he's very specific as to the name on the passport that he used, and the government says, well, we just can't find any indication of anybody on that day entering with that passport. Yes, Your Honor. And according to our mediation, they mentioned, they said, since we don't have any proof, we see it the same as an illegal entry. So this is why we cannot come to an agreement in terms of being able to remand the case back to the immigration judge. Now, we're, I think, without jurisdiction to get at the one-year bar question, because it's a disputed question of fact as to when he came in. So in terms of any relief that's available to you from us, we're talking about withholding, possibility of cap, but withholding rather than asylum. Yes, Your Honor. I have to say I'm troubled by the various discrepancies between his testimony at the hearing and the statements in his written application the first time around. It did strike me as somewhat different that his friend calls him at 4.30 in the morning. Five minutes later, he's on his way out of the house. He's next door. He then talks about in the written statement, some of the soldiers came around until sunrise. But in his testimony, he says his friend calls him at 10.30 just to check up on him. And then he leaves. There's something, there's a word missing in the transcript. Several, I left, I don't know whether it's several minutes or several hours. I would think that someone would remember quite clearly whether the call comes in at 4.30 in the morning or at 10.30. Well, Your Honor, during that time, it was a very stressful time for a respondent. He did mention all of a sudden his world was turned upside down. He was very stressed. He was scared. And he said that, oh, he remembers it was in the morning. So he cannot adequately recollect exactly what time. But in the written statement, he recollects very specifically. It was at 4.30 in the morning. Five minutes later, I left. Ten minutes later, I was at the house. The soldiers were still in the front yard at sunrise. I understand, Your Honor. I try these cases in front of immigration judges every day. And respondents, when they have to go back and relive the experiences that they have, that they are about to testify to, a lot of times they are unable to recall details in regards to time, place sometimes, or dates. What do we do with his written statement that he hesitated but didn't want to, but in the end presented his ID and his testimony that he didn't have any ID? I understand, Your Honor, that that is an inconsistency. All that I can say is that in his testimony, the main issue of why this detail was important to his credibility of fear was because that ID would show and the conversation that he had with the officers that stopped him at that time would show that he was of mixed descent and that, therefore, his life would be threatened at that situation. So, basically, I understand that there is that inconsistency, but all I'm saying is he also did mention the fact that what they questioned him about, where he worked, where he had been, and about his descent, his race and nationality. So in terms of whether he had an ID or not, that is inconsistent. But in terms of what followed after that, the questioning and the answers and the fact that he was taken into custody, that is very consistent with those testimonies. I think that is consistent. And there was a police report also filed, and the person, the expert at court could not, could not say whether that was authenticated or not. She just, it was no conclusion based on that. The one inconsistency that seems to me of potential materiality, what happens after he's arrested, is the evidence that's presented to him by the police or by the interrogators as to his loyalty to the Eritreans. In his written statement, he talks about three letters that they had found soliciting money from him, and he says in the written statement, well, I asked for the receipts, they got angry, and then they took me to the worst place. But as in his testimony, he says, what's your evidence? And they present an affidavit of somebody who says, those are pretty different pieces of evidence. I understand, Your Honor. And when he was asked to explain the inconsistency there, he mentioned that he did not remember, but that he meant to say, he didn't remember that he omitted that information. Like I said, Your Honor, I can only tell the court that when Respondents are under pressure, they're reliving a certain experience that was traumatic in their life. They tend to forget, they tend to omit details, and sometimes they tend to remember certain details that they did not remember when they were writing the declaration. Well, what about the document examiner who found the birth certificate to be fraudulent and found questionable the letter? I mean, that's documentary evidence he sought to submit that an examiner, forensic examiner, found fraudulent. She found it to be not authentic, not fraudulent. She did mention to the watermark, and she did mention that it was inconsistent, but I would like the court to take judicial notice of the fact that the expert herself mentioned that they had 50 different types of birth certificates from Ethiopia, and that she didn't have anything to compare the other documents, which is the police report and the, I think, the registration of his business. So I would just, Respondent testified to the fact that he went to city hall in his city. He got the birth certificate. He brought it with him, and that's all I can answer to that, Your Honor. All I can say is that the expert mentioned there was 50 other certificates, and they were all proven to be authentic. Okay. Thank you, Counsel. Thank you. May it please this Court, my name is Andrew Oliveira. On behalf of the Respondent, the Attorney General, Eric H. Holder. As this Court noted, there are multiple inconsistencies in McKinnon's testimony with respect to his claim that he was persecuted in Ethiopia due to his Eritrean ethnicity. The first and main inconsistency is the, what evidence was shown to him while he was detained. He said that he was shown the three letters requesting the aid, and he said that while he received them, he contributed no aid, and the officials claimed that they had receipts saying that he had submitted money. Yet when he testified, he said that he, they showed him an affidavit from someone in Eritrea who said that he had contributed money. He was repeatedly asked if there was any other evidence that he was shown, and he kept saying that he only saw the affidavit. When it was brought to his attention that he, about the, what his written statement had said, he simply said, well, I thought I had mentioned those. That explanation is not convincing. Furthermore, with respect to the ID issue, the inconsistency there, again, that goes to the heart of the claim because that formed the basis for his arrest. As he said in his affidavit, that he was initially hesitant to produce the ID, but eventually he did because he believed he had to. Mr. Oliver, I think we're pretty aware of the consistencies and the explanation and what was in the IJ and BIA's report. I mean, obviously, you could tell from Judge Fletcher's questioning that we've reviewed each of these inconsistencies, and they're troubling. I'll just say that. They're troubling. What I'm curious about is that neither the IJ or the BIA really addressed the Catt claim or really discussed the country condition reports, and they seem to suggest that what this petitioner is describing, this persecution of Ethiopians of Eritrean descent, is going on. That's a phenomenon that's going on. Shouldn't the government have at least looked at those records or said something about them? They did address the Catt claim, but specifically due to the adverse credibility and especially the document fraud with respect to the birth certificate, there isn't any conclusive evidence that he is, in fact, of Eritrean descent. And so without that fact established, you cannot just simply say because Eritreans have been harmed, he could establish that it's more likely than not that he would be tortured. So that's the first basis for denying the Catt claim. The second is that the immigration judge does address whether the harm he suffered constituted torture. So the immigration judge did, in fact, address the Catt claim. Show me where he addresses it. The Catt claim, he doesn't necessarily have to show past persecution, right? He just has to show a likelihood of torture should he be returned, right? Correct. Although evidence of past torture is a strong evidence of future torture, it's an element that can be shown. It'd be page 59 of the administrative record is when the immigration judge begins. And then it continues on to page 60 where he does find that he failed to establish that it's not more likely than not that he would be tortured in Ethiopia. So this all goes back to that you don't know, that I.J. found that he doesn't know who he says he is or if he was ever harmed. So it flows from the same adverse credibility determination you previously mentioned, but there's no did the I.J. consider the country conditions or are you saying that he doesn't need to look at the State reports? Well, because Petitioner did not establish that he is Eritrean or of Eritrean descent, the country report discussion on the harm to Eritreans isn't necessarily relevant given that he hasn't established that he's in the class of people who are tortured. Did the I.J. not credit his testimony that he was of Eritrean descent? Well, no, especially because the birth certificate was fraudulent and he has no other identifying documents. Well, I understand how you're constructing this argument. I'm not being critical of that. I understand that point. But is there evidence that, in fact, the immigration judge concluded that the suggestion that he was of Eritrean descent was false because of these other inconsistencies? Well, actually on page 59, the immigration judge says, based on the record of the court, I am not persuaded that the respondent is who he says he is, so that being both the name and the ethnicity. Let me ask you another question. So you've been in mediation in this case already? Yes. I did not personally handle it, but our office did engage in mediation. It sometimes is of concern. I don't know. This case is ‑‑ there's a lot of problems with this case here. I would agree with that. But it's also of concern that he has a U.S. citizen wife to U.S. citizen children as filed for adjustment. What happens if we deny this petition? What happens next? Well, as was mentioned, he does have the tenure bar, although he can seek a waiver of that outside of the United States. He can apply for adjustment of status at the embassy. He just cannot apply for adjustment of status inside the United States. I can't speak to the consular process of the likelihood of them granting it. So he would have to go back to Ethiopia? I don't think it's ‑‑ if he can get arrangements to go to another country, I believe he could also apply there, although ‑‑ Wasn't he deported to Ethiopia? That is my understanding. But I guess if another country would have him, he could go to another country. That would not be in our country's control. That is correct. But he was ordered to be removed to Ethiopia? Yes. Is he still in this country pending on the resolution of this case? I'm not aware of that. Okay. My guess is he is, but I'm not sure of that. Okay. If there are no further questions, please see the remainder of our time and request that this Court deny the petition for review. Thank you. Thank you, Counsel. Maconin v. Holter will be submitted, and we'll take up Maverick Spoda v. Brand Technologies.
judges: Lynn, Wardlaw, Fletcher W.